## AS TO LIABILITY FOR COAL MINING ROYALTIES WHILE THE PROPERTY WAS IN THE HANDS OF A RECEIVER.

· Common Pleas Court of Franklin County.

DORR RUN COAL CO. V. NELSONVILLE COAL CO.

Decided, November, 1910.

*Pleading—Assignee of Claims Not Entitled to Set Up a New Defense,* · *When—Lease of Coal Lands—Minimum Royalty Not Collectible During Period Property Was in the Hands of a Receiver, When.*

1. Where creditors named as defendants in an action for a receiver made up the issues in the case by proper proceedings and afterward assigned their claims to a trustee, such trustee is not entitled to be made a party to the suit with leave to plead a defense not pleaded by his assignors.

2. A lessor of coal lands under a lease which provides for payment of a minimum amount of royalty by the lessee, unless unable to mine the minimum quantity by reason of strikes or other causes over which the lessee had no control, can not collect the minimum royalty for the period during which the leased property was in the hands of a receiver, and especially where the receiver was appointed upon the petition of the lessor and in his petition he

alleged that the lessee was unable to meet its obligations because of the depressed condition of business generally.

*Donaldson & Tussing*, for plaintiff.
*E. M. Baldridge*, contra.

KINKEAD, J.

This case is now submitted to the court upon the issues presented by the supplemental petition, the answers thereto by the Morgan-Gardner Electric Company and of the Ft. Dearborn National Bank; also upon the report of the receiver herein and the request by himself and his counsel for the allowance of compensation and attorney's fees.

The case was brought April 16, 1909, by the plaintiff to recover judgment against the defendant for the sum of $246.20 with interest at 6 per cent. from March 25, 1909, upon a contract for mining coal. A receiver was appointed for the defendant company and he has been in charge of the property for a period of about nineteen months. Under orders of the court he has actually been conducting the business of mining the coal from the property for a period of thirteen months. The principal creditors are the Morgan-Gardner Electric Company and the Ft. Dearborn National Bank, their claims now aggregating about the sum of $35,000.

On September 20, 1909, plaintiff filed a supplemental petition in which it seeks to recover judgment for the minimum amount of coal which the defendant was required by the terms of the contract to mine during the periods of time set forth in the pleading.

January 4, 1910, the defendant, the Morgan-Gardner Electric Company, filed its answer to the supplemental petition and a cross-petition as well. Since the filing of this last pleading it appears that the Morgan-Gardner Electric Company and perhaps some other creditors have assigned all of the claims held by them to B. G. Huntington, trustee, these claims now aggregating $19,900. The case having been assigned for final submission upon all matters, counsel representing B. G. Huntington, trustee, appear and ask leave to be made a party defendant herein and to plead to plaintiff's supplemental petition. Counsel for Huntington urges orally that Huntington desires to

further plead, setting forth an additional ground of defense as against the royalty claim asserted by the supplemental petition. This defense goes to the question of the physical condition of the property, the application being made, no doubt, for the purpose of claiming advantage of the decision in the case of *the New Pittsburg Coal Co.* v. *Coal Co.*, 12 C.C.(N.S.), 465.

The court rules with reference to this application that B. G. Huntington, trustee, may be made a party defendant, and either by journal entry or proper pleading he may be substituted for the Morgan-Gardner Electric Company so as to present all claims which he has against the defendant. The court is of the opinion that by reason of the fact that the issues have been made up by the predecessor of Huntington, trustee, and because of the fact that Huntington, trustee, has purchased these claims during the pendency of this litigation, that no further leave to plead by the presentation of the additional issues suggested should be granted.

The claim alleged by plaintiff in its original petition has already passed into judgment, there being due the plaintiff on its judgment the sum of $385.15, with interest from January 31, 1910, and the sum of $253.78, with interest thereon from September 30, 1909. The receiver, out of the funds in his hands, may be ordered to pay this judgment immediately.

The claim asserted by the supplemental petition is for the recovery of $6,563.10, with interest from the several dates when it is claimed the several sums for unpaid royalties became due as stated in the petition. This claim is founded upon a provision in the contract which provided:

"That in the event the number of tons of coal mined during any year preceding the first day of August in the year should be less than the minimum amount required to be mined and paid for during such year, then and in that event on or about twenty-five days after said first day of August of each year, payment should be made for said difference between the number of tons mined and the minimum quantity agreed to be mined as aforesaid, and that each year under said lease should run from August first to July thirty-first, inclusive."

The petition avers:

"That said defendant, the Nelsonville Coal Company, should

not be required to mine any specific amount of coal before the thirty-first day of July, 1907, but that during the year, beginning August first, 1907, said defendant, the Nelsonville Coal Company, should mine not less than 50,000 tons of coal, and that during each year beginning with the first day of August, 1908, said defendant should mine not less than 100,000 tons of coal, and agree to pay the royalty on said minimum of 100,-000 tons of coal at the rate of ten cents per ton for each year whether the same should be actually mined or not.''

The cross-petitions of both the Morgan-Gardner Electric Company and the Ft. Dearborn National Bank plead the provision which is contained in the contract but not pleaded by the plaintiff, which is as follows:

''If by reason of strikes or any other cause over which the second party, his heirs or assigns, has no control, said second party, his heirs or assigns, is unable to mine the minimum quantity herein required during any year during the term of this lease, then the said second party, his heirs or assigns, shall not be required during such year or years to mine such minimum, nor pay the minimum royalty thereon.''

The pleading of plaintiff alleges that during the year beginning August 1, 1908, and ending July 31, 1909, the Nelsonville Coal Company mined and removed from the premises 40,-514 tons of coal, leaving and making a deficiency in said minimum amount to be mined within and during that year of 59,486 tons of coal. It is claimed that that renders the defendant liable to pay the sum of $5,948.60. The cross-petitions of the two defendants named admit that the defendant mined only 40,514 tons of coal. The lessor, the plaintiff corporation, brought this action, and was, therefore, responsible for placing the defendant corporation in the hands of a receiver. The action was brought, as the allegations in the plaintiff's petition show, because of the inability of the defendant company to meet its obligations and to continue the business. The plaintiff alleges as one of the causes for placing the property in the hands of the receiver, the financial difficulty and embarrassment of the defendant by reason of threatened executions and attachments against its property, and the fact that it had been compelled to shut down the operation of its plant and business for lack

of necessary labor to run the same and necessary money to carry on the same.

The property having been, by the action of the plaintiff itself, placed in the custody of the law, where it has remained for fifteen months, it is bound to submit to the consequences thereof. The court was at liberty to order the property sold at once or to continue the business as it deemed most beneficial for the trust.

For the time covered between August 1, 1908, up to April 16, 1909, when this action was filed, and the receiver was appointed, we must look to the conditions and causes which made it impossible for the defendant itself to perform the contract and to mine not less than the minimum amount required thereby. From April 16, 1909, to July 31, 1909, there can be no claim whatever asserted by the plaintiff under its contract for royalties on the minimum amount, because the property was in the custody of the law, and there was no obligation on the part of the court to see that the property was mined, and the plaintiff must suffer the consequences of any loss thereby by it sustained.

The plaintiff itself can truly be said to have furnished the reasons for the failure of the defendant to mine the minimum amount required by the contract in the allegations of its petition for the period up to the time when the receiver took charge. I am of the opinion that the doctrine in the case of *the New Pittsburg Coal Co.* v. *Coal Company*, 12 C.C.(N.S.), 465, applies, and it appears that from the allegations in the pleading that the defendant was unable to continue the operation of the mine because of its inability to secure the necessary labor and the necessary money to carry on the same. The petition alleges further, that:

"Owing to the condition of the coal trade during the past year and the condition of the money market, it has not been able to procure the necessary ready money to meet its obligations as they become due and to keep its business running, although said defendant company is not insolvent."

That is an admission on the part of the plaintiff itself of a very material cause over which the defendant company could have no control, because of the financial difficulties prevailing at that period. My judgment is that this is a cause over which

defendant had no control within the meaning of the contract.

Furthermore, the plaintiff having alleged and acted upon these facts in seeking to protect its rights, can not now assert otherwise, and claim the royalty on the minimum coal required to be mined.

There is another aspect of this question. There can be no doubt but that the purpose of the minimum clause in contract was to operate upon the lessee as a penalty. It was designed to compel the lessee to mine at least the minimum of coal per year, or to pay the lessor for that amount of coal whether it was mined or not. Penalties are not favored in equity. This proceeding is equitable in its nature.

The property has been sold, and the court is now called upon to order a distribution of the money in the hands of the receiver. To allow plaintiff to take so much out of the proceeds as this claim of royalty for the unmined coal, as against the creditors, would be inequitable. The coal remaining in the ground and passing to the purchaser makes it possible for plaintiff to obtain his royalty on the coal actually mined, which is all that he is equitably entitled to, at least so far as concerns the proceeds of sale in the receiver's hands.

Whatever view a court of law might take of the question in a proceeding for the recovery of the royalty by the lessor against the lessee is not material in this case which appeals to the equity powers of the court.

I am of the opinion that the plaintiff is not entitled to recover for the minimum coal which defendant contracted to mine, for the reasons already stated, and the finding is against the plaintiff on the supplemental petition.

An order may now be drawn, if counsel so desire, authorizing the receiver to pay the taxes and the judgment.

I am not ready to make a finding on the question of taxes as to whether or not the Morgan-Gardner Electric Company should pay a proportionate part of the taxes in view of the fact that the property was returned to it. I would be glad to have counsel assist by the citation of any authorities upon this point.

The allowance to counsel and receiver will be made immediately upon the filing of the report.